UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARDROW SMITH,

     Petitioner,

v.

MARY BERGHUIS,

     Respondent.

Case No. 2:12-cv-14322-LJM
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING AMENDED PETITION FOR HABEAS CORPUS [12] AND GRANTING IN PART CERTIFICATE OF APPEALABILITY**

---

In September 2009, two Detroit police officers, Michael Sova and Heather Hale, were following a vehicle that Petitioner Leonardrow Smith was driving. Not long after Smith pulled over and exited the vehicle, an exchange of gun fire resulted in both officers being shot. In February 2010, Smith was tried on charges arising out of the shooting. Sova testified that Smith was the shooter. Hale testified that she could not see who the shooter was. A passenger in the car that Smith had been driving, Mead Sterling, gave conflicting testimony as to who, Sova or Smith, shot first. Smith's cousin testified that soon after the incident Smith confessed to her that he had shot the officers. Smith did not testify (but he maintains that "Lil Marcus" was also in the car and was the shooter, and, in the alternative, if he was the shooter, he shot only in self-defense). And no witnesses testified on Smith's behalf.

Following a bench trial, the state-court judge convicted Smith of several offenses, including assault with the intent to commit great bodily harm, resisting or obstructing a police officer causing a serious impairment of a body function, and felon in possession. The Michigan

Court of Appeals affirmed Smith's conviction on direct appeal, and the Michigan Supreme Court denied leave for further appeal.

In September 2012, Smith filed a petition for a writ of habeas corpus in this District. The judge previously assigned this case stayed Smith's petition so that Smith could return to state court and seek relief from judgment. Smith did so and now returns to federal court on an amended habeas petition (Dkt. 12, "Amended Petition"). The Court has considered the eight claims in Smith's Amended Petition. For the reasons that follow, the Court will DENY Smith's request for a writ of habeas corpus.

## I.

### A.

Although Smith has filed a form habeas petition setting forth some facts supporting his eight claims, Smith has not prepared a brief in support of his petition. It appears that Smith instead relies on his direct appeal brief (Dkt. 16-9 at Pg ID 737–70; Smith's Br. on Appeal to Mich. Ct. App.) in support of five of his habeas claims and his motion for relief from judgment (Dkt. 16-6 at Pg ID 562–606, Smith's Mot. for Relief from J.) in support of the other three. A comparison of the facts recited in those two briefs against those found by the Michigan Court of Appeals reveals that they are largely in accord. Accordingly, the Court presents the facts as found by the Michigan Court of Appeals with limited modification based on Smith's direct-appeal brief and post-conviction brief.[1]

---

[1] The Court is aware that § 2254(e)(1) provides, "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." But where, as here, § 2254(d)(2) applies (at least to some claims), the interplay between §§ 2254(d)(2) and (e)(1) is unsettled. *See Wood v. Allen*, 558 U.S. 290, 293 (2010) ("We granted certiorari to address the relationship between §§ 2254(d)(2) and (e)(1). We

On September 9, 2009, police officers Heather Hale and Michael Sova were on routine patrol at 5:00 p.m. in a marked police vehicle traveling on a one-way street, Northfield Avenue. Two occupants were traveling in a red Pontiac in front of the squad car. Suddenly, the vehicle pulled to the side and parked, leaving the rear of the vehicle protruding into the street.

[Smith] exited the driver's door and began to walk on the sidewalk while talking on a cellular telephone. The police officers testified that they attempted to make contact with [Smith], but he initially ignored them. Officer Sova called [Smith] over to the vehicle, and both officers began to exit the vehicle to speak to [Smith].

[Sova] testified while Smith was about ten feet away, "I'm exiting the car and now I would say I'm out of the car standing up trying to step away when [Smith] turns his body, so his right side is now exposed to me and I can see the barrel of a pistol, and he fires with the gun kind of close to his side." (Trial Tr. Vol. I at 60.) Sova recalled that Smith shot six times, the first two while drawing the gun, four more with his arm out. (*Id.* at 62.) Once Smith started shooting, Sova returned fire. (*Id.*)] [As a result of the exchange of fire,] Officer Hale was grazed on her left thigh and shot in her right calf. . . . Officer Sova was shot in his upper right thigh and his lower left leg. The bullet travelled through his right leg and became lodged in his leg. . . .

[Hale testified that she heard shots but could not see who shot because she was crouched down on the opposite side of the vehicle. (Trial Tr. Vol. I at 33–34.)]

[Smith] proceeded to the home of his relatives, located approximately one block east of the shooting. [Smith]'s cousin, Shaquita Roy, testified that he came to her home [and did not seem excited and spoke about "a whole bunch of stuff" but then] admitted to shooting a police officer. [Smith] told her that he screwed up and shot a police officer because he had an outstanding warrant. He began to pace when police sirens became audible. The special response team of the police department arrested [Smith] at the residence.

Once in custody, Sergeant Kenneth Gardner interviewed [Smith] after he waived his constitutional rights. The sergeant testified that it was not standard procedure to videotape interrogations. Rather, he wrote [down] the questions he presented

---

conclude, however, that the state court's factual determination was reasonable even under petitioner's reading of § 2254(d)(2), and therefore we need not address that provision's relationship to § 2254(e)(1)."); *Rice v. White*, 660 F.3d 242, 254 (6th Cir. 2011) ("It is an open question whether 28 U.S.C. § 2254(e)(1) . . . applies in every case presenting a challenge under § 2254(d)(2)." (internal quotation marks omitted)); *Murray v. Schriro*, 745 F.3d 984, 1001 (9th Cir. 2014) ("Since [*Kesser v. Cambra*, 465 F.3d 351 (9th Cir. 2006)], our panel decisions appear to be in a state of confusion as to whether § 2254(d)(2) or (e)(1), or both, applies to AEDPA review of state-court factual findings."). Because it does not affect the outcome, the Court will assume, without deciding, that § 2254(e)(1) does not apply.

and [Smith]'s answers. [According to these notes, which Gardner read at trial following the exhibit's admission (Trial Tr. Vol. I at 120–26),] [Smith] [told Gardner] that Officer Sova saw the butt of [Smith]'s gun and shot at [Smith]. In response, [Smith said he] merely shot at the ground to prevent the officer from chasing him. [Smith] also claimed that there was a third person in the vehicle known as "Little Marcus."

Bullet casings were retrieved from the scene. Although Officer Sova testified that [Smith] fired his weapon at the officers from ten feet away, the nearest non-police fired casings were found 54 feet away. Two additional casings were approximately 85 feet away.

The passenger of [Smith]'s vehicle, Mead Sterling, testified that he was traveling with [Smith]. [Smith] displayed a gun to Sterling and told him to take it, but Sterling refused. [Smith] exited the vehicle and began to walk. [Smith] exited the passenger seat. However, Sterling then gave conflicting testimony regarding who fired shots first, [Smith] or the police officers. [Sterling acknowledged that in the report he gave to the police, he stated that as Smith started to run, Sova drew his gun. (Trial Tr. Vol. I at 98.) Sterling said that Sova was first to draw his weapon. (*Id.*) Sterling also acknowledged that in his statement to the police, he thought Sova shot first; but when asked at trial if that was still his position, Sterling said: "I don't know. I got on the ground." (*Id.* at 100.) Sterling testified that "[Smith] ran off shooting, running back, like shooting." (*Id.* at 106.)]

*People v. Smith*, No. 297164, 2011 WL 1775869, at *1–2 (Mich. Ct. App. May 10, 2011) (some paragraphing altered).

## B.

The trial court convicted Smith. It "found the testimony of Officer Sova's identification of [Smith] as the shooter credible despite the disparity in the testimony regarding the distance of the shooting." *Smith*, 2011 WL 1775869, at *2. The trial judge also "noted the testimony of [Smith]'s cousin and that [Smith] was found in his relatives' home after the shooting." *Id.* "[Smith] was acquitted of two counts of assault with intent to commit murder, but convicted of two counts of assault with intent to commit great bodily harm. In all other respects, [Smith] was convicted as charged." *Id.*

### C.

Smith appealed. He asserted five trial errors: (1) that there was insufficient evidence to show beyond a reasonable doubt that he was the shooter in violation of the Due Process Clause; (2) that his trial counsel was constitutionally ineffective by (a) failing to present a theory of the case that Lil Marcus was the shooter, to call witnesses who would have supported that theory and who were at the courthouse on the day of Smith's trial, and (b) electing a bench over a jury trial; (3) that, in the alternative, his trial counsel was constitutionally ineffective for failing to argue that Smith shot at the ground in response to the officer's use of excessive force (shooting at him); (4) that there was insufficient evidence to show that an officer received a "serious impairment of a body function" (an element of one of the offenses Smith was convicted of) in violation of the Due Process Clause; and (5) (a) the trial court miscalculated Smith's prior record and offense variables which resulted in an improper sentence and (b) trial counsel was constitutionally ineffective by failing to ensure that the court correctly scored the variables. (*See generally* Dkt. 16-9 at Pg ID 737–70, Smith's Br. on Appeal to Mich. Ct. App.)

Attached to Smith's appeal brief was Smith's unsigned affidavit providing that he told his trial counsel that Lil Marcus was the shooter and identified witnesses for counsel but counsel "refused to interview these people." (Smith's Br. on Appeal to Mich. Ct. App. at Pg ID 767.) The unsworn statement further provides, "[My] witnesses came to the courthouse on the date of trial and were prepared to testify that Lil Marcus was the shooter, but [my] attorney refused to call them to testify." (*Id.* at 768.) In his post-conviction motion Smith asserted, "Appellate counsel failed to have Defendant Smith's affidavit . . . sworn to and signed by Defendant before attaching same to his brief on appeal." (Dkt. 16-6 at Pg ID 564 ¶ 7.)

In October 2010, along with Smith's appeal brief, Smith's appellate counsel also filed a "Motion to Remand for a *Ginther* Hearing" asserting that trial counsel was ineffective by failing to call witnesses. (Dkt. 16-8 at Pg ID 626.) It appears that the motion did not attach any supporting evidence. (*See id.*) But it did reference Smith's appeal brief, which, as noted, had the unsigned affidavit. (*See id.*) In November 2010, the Michigan Court of Appeals denied the motion "because defendant-appellant . . . failed to demonstrate by a proper affidavit or an offer of proof the facts to be established at a hearing." (Dkt. 16-8 at Pg ID 662 (citing Mich. Ct. R. 7.211(C)(1)(a)(ii).)[2]

On March 16, 2011, Smith filed a motion for leave to amend the appeal brief and included affidavits supporting Smith's claim that he was not the shooter. The motion explained the nature of the affidavits and why they were not previously filed:

> 3) Defendant has garnered notarized affidavits of [four] witnesses and they are attached as Appendix A to this motion. All of these affidavits attest that these witnesses saw another individual known as 'lil Marcus' shoot the police officers and that they were all in court the day of trial and were never called as witnesses.
>
> 4) Accordingly, Mr. Smith now seeks leave to amend his prior brief by adding the affidavits as support for issue II and seeks remand for a new trial or a *Ginther* hearing on the ground that his trial attorney was ineffective for failing to call thes[e] witnesses and advance his defense to the case. . . .
>
> 5) . . . It is very difficult for an incarcerated Defendant and an assigned appellate counsel with a very heavy caseload to get affidavits ready in time for the brief deadline.

(Dkt. 16-8 at Pg ID 699.) The attached affidavits were signed in November 2010. (Dkt. 16-8 at Pg ID 712–17.) On March 23, 2011, the Michigan Court of Appeals denied the motion, stating, "The motion for permission to amend appellant's brief to file supplemental appendices is DENIED because the proffered documents are an impermissible expansion of the record on

---

[2] Michigan Court Rule 7.211(C)(1) states, "A motion under this subrule must be supported by affidavit or offer of proof regarding the facts to be established at a hearing."

appeal. The record on appeal is confined to the record made in the trial court. See MCR 7.210(A)(1)." (Dkt. 16-9 at Pg ID 733.)

The next month, on April 19, 2011, Smith's counsel filed a "Motion for Extension of Time to File Amended Motion to Remand or for Remand to the Trial Court for a *Ginther* Hearing." (Dkt. 16-8 at Pg ID 718–21.) The motion was almost identical in content to the motion for leave to amend the appeal brief except that it did not attach the witness affidavits. (*See id.*)

On April 27 and April 29, 2011, the Michigan Court of Appeals entered two orders. In one, it said, "The Court orders that the motion for extension of time to file an amended motion or remand to the trial court is DENIED." (Dkt. 16-8 at Pg ID 722.) In the other, the appellate court stated, "The Court orders that the motion to remand pursuant to MCR 7.211(C)(1) is DENIED for failure to persuade the Court of the necessity of a remand at this time." (Dkt. 16-8 at Pg ID 723.)

In May 2011, the Michigan Court of appeals affirmed Smith's conviction. *People v. Smith*, No. 297164, 2011 WL 1775869 (Mich. Ct. App. May 10, 2011). Its reasoning will be discussed in detail below.

### D.

The Michigan Supreme Court denied Smith leave to appeal as it was "not persuaded" that it should address the questions Smith presented. (Dkt. 16-9 at Pg ID 724.)

### E.

Smith then filed a petition for habeas corpus in this judicial district. (Dkt. 1.) As noted, the judge previously assigned this case stayed Smith's petition so that Smith could seek post-conviction relief in state court. (Dkt. 10.)

In January 2012, Smith filed a motion for relief from judgment in the state trial court. He raised these claims: (1) that his trial counsel was constitutionally ineffective because (a) counsel failed to "locate, interview, or call" witnesses that would have testified that Smith was not the shooter—despite that Smith informed his counsel about the potential witnesses prior to trial and that the witnesses were present at the courthouse, and (b) counsel waived Smith's right to call witnesses in his behalf; (2) that his appellate counsel was constitutionally ineffective because she did not adequately pursue his defense that Lil Marcus was the shooter despite that he supplied witness affidavits to her.

The same state-court judge that presided over Smith's trial denied Smith's motion for relief from judgment. As to the first claim, the trial judge said that it had already been addressed by the Michigan Court of Appeals so could not be raised on a motion for relief from judgment. (Dkt. 16-7, Order Denying Mot. for Relief from J. at Pg ID 608.) As to Smith's second claim, the state trial court found that "appellate counsel did not abandon the issues raised in the motion and defendant is not entitled to relief from judgment on this issue." (*Id.* at Pg ID 609.)

**F.**

In April 2014, Smith returned to this Court by filing a motion to lift the stay of his habeas petition (Dkt. 11) and by filing an amended petition for a writ of habeas corpus (Dkt. 12, "Amended Petition"). The Amended Petition sets forth eight claims for relief—the five claims Smith raised on direct appeal to the Michigan Court of Appeals and the three claims he raised in his state-court motion for relief from judgment and subsequent appeal of that trial court's denial of that motion.

## II.

### A.

The Court begins with Smith's claims that his trial counsel was constitutionally ineffective. He asserts that he was deprived of his Sixth Amendment rights (1) because counsel failed to interview witnesses that would have testified that Smith was not the shooter despite being told about them before trial, failed to call these witnesses despite their presence in the courthouse on the day of trial, and, relatedly, waived Smith's right to call witnesses in his behalf, (2) because, in the alternative, counsel failed to argue that Smith shot at the ground in response to the officer's use of excessive force, and (3) because counsel elected a bench trial over a jury trial. Smith also asserts that he was "constructively denied [his] constitutional right to have an attorney represent [him] throughout [his] criminal proceedings" (Am. Pet. for Habeas at 11); the Court turns to that claim first and then addresses the other three.

### 1.

"In the normal course, defendants claiming ineffective assistance of counsel must satisfy the familiar framework of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a showing that 'counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1375 (2015). But in *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court "held that courts may presume that a defendant has suffered unconstitutional prejudice if he 'is denied counsel at a critical stage of his trial.'" *Woods*, 135 S. Ct. at 1375 (quoting *Cronic*, 466 U.S. at 659). "[I]n *Bell v. Cone*, 535 U.S. 685, 696, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), [the Supreme Court] characterized a 'critical stage' as one that 'held significant consequences for the accused.'" *Woods*, 135 S. Ct. at 1376.

Here, Smith asserts, "my attorney did not investigate my case, did not interview any witnesses, did not discuss any trial strategy with me at any time, waived my right to call witnesses and did not discuss the pros and cons of testifying on my own behalf. As such, I was left to fend for myself." (Am. Pet. at 11.) This claim, to the extent it invokes *Cronic*, appears to be unexhausted. In any event, Smith has not shown a *Cronic*-level failure of trial counsel. A review of the trial transcripts shows that Smith's counsel made an opening statement, cross-examined witnesses, and made a closing argument, in which he challenged the credibility of the various officers and argued that Smith had the right to resist the officers' excessive force. Moreover, Smith's trial counsel obtained an acquittal on the most serious charges of assault with intent to commit murder, which carries a possible sentence of life in prison, *see* Mich. Comp. Laws § 750.83. The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F. 3d 236, 247 (6th Cir. 2007) (citing *Bell*, 535 U.S. at 697). That is not the case here, so the presumption of prejudice under *Cronic* does not apply. *Cf. Benge*, 474 F. 3d at 247 ("[C]ounsel's failure to object to the erroneous jury instruction, no matter how professionally unreasonable, was not a complete failure to provide a defense.").

**2.**

In ruling on Smith's claim that trial counsel did not call witnesses to testify that he was not the shooter, or investigate or present that defense, the Michigan Court of Appeals invoked waiver: "[D]efendant failed to meet his burden of proving the factual predicate for his claim regarding the presentation of witnesses and a defense. Defendant failed to present documentary evidence regarding the names and addresses of witnesses that would have testified on behalf of defendant. Therefore, this claim is waived." *Smith*, 2011 WL 1775869, at *4 (citations omitted).

And, as noted, the trial judge in ruling on Smith's motion for relief from judgment simply found the issue already addressed by the Michigan Court of Appeals: "[Smith] first argues that trial counsel was ineffective for failing to investigate, call witnesses, and present a substantial defense. However, defendant raised this same argument on appeal, and the Court of Appeals found that defendant was not denied the effective assistance of counsel." (Dkt. 16-7, Order Denying Mot. for Relief from J. at Pg ID 608.) The upshot is that no state court reached the merits of Smith's ineffective-assistance claim insofar as that claim is premised on Smith's theory that Lil Marcus was the shooter. Instead, the state courts barred the claim procedurally.

But a federal habeas court can forgo an analysis of the procedural default factors, *see Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), and instead assume, without deciding, that a habeas petitioner could clear the procedural bar where the petitioner's claims fail on the merits. As will be explained, that is the case here, and so the Court skips to the merits. *See Stewart v. Morgan*, 232 F. App'x 482, 487 (6th Cir. 2007) ("[W]e exercise our discretion to dismiss this claim on the merits rather than address the issue of procedural default."). It does so, however, without invoking AEDPA-deference. *See Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011) ("Claims that were not 'adjudicated on the merits in State court proceedings' receive the pre-AEDPA standard of review: de novo for questions of law (including mixed questions of law and fact), and clear error for questions of fact."); *Davis v. Rapelje*, 33 F. Supp. 3d 849, 855–56 (E.D. Mich. July 3, 2014).

To demonstrate constitutionally ineffective assistance of counsel, Smith must show that his counsel "provided deficient assistance and that there was prejudice as a result." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). "To be deficient, counsel's representation must have fallen 'below an objective standard of reasonableness,' *Strickland*, 466 U.S. at 688[]; and there is a

'strong presumption' that counsel's representation is within the 'wide range' of reasonable professional assistance, *id.*, at 689[]." *Harrington*, 562 U.S. at 104. Smith must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome, but something less than a showing that the outcome more likely than not would have been different." *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004).

Here, any ineffectiveness by trial counsel does not "undermine confidence in the outcome" of the underlying bench trial. True, Smith has affidavits of four bystanders who would have testified that Lil Marcus was the shooter had counsel called the witnesses. But four other witnesses testified that Smith was the shooter: Sova identified Smith as the person who shot him (and the trial judge found him credible), Sterling (who was in the car with Smith and made no mention of a Lil Marcus) said Smith shot, Smith's cousin said Smith confessed to shooting an officer, and Gardner testified that Smith admitted to shooting (albeit at the ground). The affiants that Smith relies upon do not explain their familiarity with Smith or Lil Marcus or why Lil Marcus would have been motivated to shoot the police. In contrast, Smith has offered no reason for the trial court to have questioned his cousin's veracity, a family member who had known Smith since sixth grade, and she provided a motive: that Smith told her he shot because there was a warrant for his arrest. Further, although Smith mentioned Lil Marcus' presence at the shooting during his confession to Gardner, Smith did not then say that Lil Marcus shot Sova. Had trial

counsel called Smith's witnesses to testify at trial, the result would have in all likelihood been the same.

Indeed, it could have been worse. If counsel would have pursued the Lil-Marcus defense, he would have reduced the entire case into a credibility finding by the trial judge as to whether Smith or Lil Marcus was the shooter. This risk had to be assessed in view of the potential costs: if Smith's witnesses failed to persuade the trial judge that Lil Marcus was the shooter, Smith would have been without the benefit of having forwarded a theory that he was the shooter but shot without intent—a substantial defense to his most serious charge of assault with intent to murder.

In short, even if Smith could clear the Michigan Court of Appeals' finding that he had "waived" his claim, Smith has not shown that the merits of his ineffective-assistance-of-trial-counsel claim, insofar as it is premised on the assertion that trial counsel failed to investigate and present a theory that Lil Marcus was the shooter, warrants habeas relief.

**3.**

As for Smith's claim that trial counsel was constitutionally ineffective for failing to argue that Smith had a right to resist Officer Sova's use excessive force, and for failing to request a jury instruction on this defense, the Michigan Court of Appeals ruled:

> Defendant also asserts that trial counsel was ineffective for failing to request a jury instruction regarding defendant's right to resist excessive force. We disagree. "In a bench trial, the trial court is presumed to know the applicable law." *Lanzo Constr Co.*, 272 Mich.App at 484. Jury instructions must include all elements of the charged offense and must not exclude defenses and the defense theory if supported by the evidence. *People v. Clark*, 274 Mich.App 248, 255–256; 732 NW2d 605 (2007). An examination of the record reveals that this claim of error is without merit. Defense counsel argued to the trial court that Officer Sova exceeded his lawful authority. The factual predicate for defendant's claim was the testimony of Sterling. However, the trial court noted that Sterling's testimony conflicted and provided differing accounts regarding actually observing the shooting and identifying the first shooter. In light of this conflict, the trial court

13

> relied on other witness accounts to render its decision, and we cannot conclude that the trial court erred in its assessment of the credibility of the witnesses. *Sexton*, 461 Mich. at 752.

*Smith*, 2011 WL 1775869, at *4.

The foregoing indicates that the Michigan Court of Appeals reached "the merits" of Smith's claim that his trial counsel was ineffective in failing to argue a self-defense theory and request a corresponding jury instruction. So the Court will defer to the Michigan Court of Appeals' rationale under 28 U.S.C. § 2254(d). *See Smith v. Jenkins*, — F. App'x —, No. 13-4269, 2015 WL 1865719, at *3 (6th Cir. Apr. 23, 2015) ("In determining whether AEDPA's heightened deference applies to Smith's case, we look to the 'last reasoned [state-court] opinion' to address Smith's ineffective-assistance-of-counsel claim."); *Davis v. Rapelje*, 33 F.Supp.3d 849, 855–59 (E.D. Mich. 2014) (analyzing in detail the threshold questions of whether a state-court decision was "on the merits" within the meaning of § 2254, and "looking through" Michigan Supreme Court's "not persuaded" summary order denying leave).

In particular, this Court "shall not" grant Smith habeas relief on his ineffective-assistance-on-excessive-force-defense claim unless the Michigan trial court's adjudication of that claim resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A federal habeas court may grant the writ under the "contrary to" clause "if the state court arrive[d] at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decide[d] a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Hodges v. Colson*, 727 F.3d 517, 525 (6th Cir. 2013) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "Under the

'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from the Supreme Court's decisions but unreasonably applie[d] that principle to the facts of the petitioner's case." *Id.* (citing *Williams*, 529 U.S. at 412–13). "[C]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (internal quotation marks omitted). In short, § 2254(d) deference is significant: "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 15–16, 187 L. Ed. 2d 348 (2013) (quoting *Harrington*, 562 U.S. at 103).

The Michigan Court of Appeals did not unreasonably apply *Strickland* in concluding that his trial counsel was not constitutionally ineffective by not arguing an excessive-force defense. This is at least because, during closing argument, counsel brought the defense to the trial judge's attention:

> Mr. Sterling said that the officer pulled his gun first and it was his belief that the officer shot first. Okay. If we're to believe that, okay, he was, you know—this was a parking violation. Okay. You know, you know, we believe that the officer exceeded his lawful authority. At that point in time he pulled a gun. Okay. And even then Mr. Smith would have been—had a right to defend himself.

(Dkt. 16-4, Trial Tr. Vol. II at 35–36.) As for counsel's failure to request an excessive-force jury instruction, absent evidence to the contrary, and there is none here, Michigan judges are presumed to know the law. *See People v. Farmer*, 186 N.W.2d 779, 780 (Mich. Ct. App. 1971).

15

This means not only that counsel's failure to request an instruction was not objectively unreasonable, but also that Smith has not shown that there is "a reasonable probability" that had counsel requested the instruction, he would not have been convicted.

The Michigan Court of Appeals did not unreasonably apply *Strickland* to this claim.

**4.**

Regarding Smith's claim that trial counsel was constitutionally ineffective for waiving his right to a jury trial, the Michigan Court of Appeals reasoned:

> Defendant concludes that trial counsel was ineffective for waiving the right to a jury trial. First, a review of the record reveals that defendant responded affirmatively to the trial court's advice of rights and questioning regarding the voluntary waiver of the right to a jury trial. Additionally, on the record, defendant stated his concern that the jury would be inflamed in light of the fact that the victims were police officers. The record does not support a challenge to the waiver of the right to a jury trial.

*Smith*, 2011 WL 1775869, at *4.

AEDPA-deference or no, Smith's ineffective-assistance-of-counsel claim based on the election of a bench over a jury trial does not justify habeas relief. Smith says he asked his counsel for a jury trial because he had "just had a case dismissed in front [of the trial judge]," but counsel thought a bench trial the better course because there were no African-American people in the jury pool. (Smith's Br. to Mich. Ct. App. at 16.) Even accepting this as fact, the trial-court's colloquy shows that, ultimately, it was *Smith*'s informed and voluntary choice to proceed with a bench trial:

> THE COURT: All right. We're here today for jury trial. It's my understanding that Mr. Smith wishes to proceed . . . with a bench trial, what we call a waiver trial, as opposed to a jury trial in this particular matter because—in part, because of the nature of the allegations.
>
> MR. EVANS: Yes, Your Honor.

THE COURT: And he's somewhat concerned that the jury may be—you know, lose focus because of the nature, the inflammatory, potentially, allegations, is that correct, Mr. Smith?

DEFENDANT SMITH: Yes, sir. . . .

THE COURT: You've reviewed the waiver form, is that correct?

DEFENDANT SMITH: Yes, sir.

THE COURT: You understand you have a constitutional right to have a jury trial today. In fact, the jury's been out there for about an hour, hour-and-a-half as the parties have been going back and forth trying to resolve the case, but it's not able to resolve, so either we proceed with a jury or a bench or waiver trial, *your option. You understand that?*

DEFENDANT SMITH: *Yes, sir.*

THE COURT: And you understand that with a bench or waiver trial, I'm the only one who can decide this case. You're not going to have 12 people deciding your—the outcome of the case, you understand that?

DEFENDANT SMITH: Yes, sir.

THE COURT: *Okay. Now, is anybody forcing you to give up your constitutional right to a jury trial?*

DEFENDANT SMITH: *No, sir.*

THE COURT: You've had discussions with Mr. Evans about this, *and after having discussed it with Mr. Evans, it's your decision to proceed with a bench trial, is that correct*?

DEFENDANT SMITH: *Yes, sir.*

(Trial Tr. Vol. I at 4–6 (emphases added).) Given this colloquy, that counsel advised a bench trial does not demonstrate prejudice under *Strickland*—Smith either fully understood the consequences of proceeding in that manner as he advised the trial court or had ample opportunity to have any doubts quelled by counsel or the court.

17

**B.**

As noted, Smith also claims that his appellate counsel was constitutionally ineffective. Smith says,

> My appellate attorney denied me assistance of counsel at the critical stage of my appeal when exculpatory evidence that was presented in the form of affidavits was ignored by appellate counsel. These affidavits came from res gestae witnesses who saw the entire incident and which exonerate me from the instant case. I believe that this refusal by appellate counsel to consider this newly discovered and newly presented evidence violated my constitutional Due Process rights and protections.

(Am. Pet. at 12.) In his post-conviction motion, Smith asserted that "most troubling" was that his appellate counsel "claimed that her 'case load' prevented her from complying with the [Michigan Court of Appeals'] briefing deadline." (Smith's Mot. for Relief from J. at Pg ID 578.)

Even assuming that the manner in which Smith's appellate counsel pursued Smith's ineffective-assistance-of-trial-counsel claim was "objectively unreasonable" under *Strickland*, for reasons already explained, Smith has not shown that absent his trial counsel's unprofessional errors, there is a "reasonable probability" that the outcome of trial would have been different. It follows that Smith has not shown that his appellate counsel's errors resulted in prejudice as contemplated by *Strickland*.

**C.**

The Court considers together Smith's Due Process Clause claims based on insufficiency of evidence to convict beyond a reasonable doubt. As noted, Smith argues that there was insufficient evidence (1) that he was the shooter and (2) that the shooting resulted in a "serious impairment of a body function."

In determining whether the evidence to support a criminal conviction is sufficient, a court asks whether, after viewing the evidence in the light most favorable to the prosecution, *any*

18

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). The *Jackson* standard applies to bench trials, as well as to jury trials. *See U.S. v. Bronzino*, 598 F. 3d 276, 278 (6th Cir. 2010).

### 1.

The Michigan Court of Appeals rejected Smith's claim that there was insufficient evidence that he was the shooter:

> Officers Hale and Sova testified that they attempted to stop defendant after he parked his vehicle in a manner that protruded into the street. Although Officer Hale did not see the shooting, she identified defendant from a photographic array as the person who drove the vehicle. Additionally, Officer Sova identified defendant as the person he attempted to speak with, but defendant pulled a gun and fired at the officers. Despite Officer Sova's mistake regarding the distance between him and the shooter, the trial court nonetheless found that this identification testimony was credible. Defendant's passenger, Sterling, did not testify that there was a third occupant in the vehicle. Defendant's cousin testified that defendant admitted to shooting a police officer, and his admission did not blame a third-party named Marcus. In his unsigned statement to police, defendant mentioned a third individual named Marcus, but never accused Marcus of being the shooter. Accordingly, the record does not support defendant's challenge to the sufficiency of the evidence of identification.

*Smith*, 2011 WL 1775869, at *3 (internal footnote omitted).

As the foregoing reflects that the Michigan Court of Appeals addressed the merits of Smith's sufficiency-of-evidence claim, this Court can only grant Smith habeas relief if the Michigan Court of Appeals unreasonably applied *Jackson*. *See Moreland v. Bradshaw*, 699 F.3d 908, 917 (6th Cir. 2012) ("[E]ven were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." (internal quotation marks omitted)).

Smith has not cleared this two-tiered hurdle. Smith says that his theory that Lil Marcus shot at Sova in consistent with the following evidence: (1) Sova testified that Smith was ten feet

away when the firing occurred, (2) only police casings were found around that area, and (3) non-police casings were found much further away, at 54, 83, and 87 feet. (Smith's Br. on Appeal to Mich. Ct. App. at 12, 14.) Although this evidence lends some support to Smith's theory of the case, as discussed, substantial evidence—namely, multiple witnesses indicating that Smith was the shooter—contradicted it. There was more than enough for a reasonable fact finder to conclude beyond a reasonable doubt that Smith was the shooter. At a minimum, that the Michigan Court of Appeals reached this conclusion was not an unreasonable application of *Jackson*.

## 2.

Regarding Smith's claim that there was insufficient evidence that Officer Sova suffered a "serious impairment of a body function" the Michigan Court of Appeals reasoned as follows:

> Next, defendant contends that there was insufficient evidence of a serious impairment of a body function suffered by Officer Sova as that term is defined in MCL 257.58c. We disagree. The listing of injuries contained within MCL 257.58c is not exhaustive, and therefore, other injuries not contained within the list may qualify as a serious impairment of a body function. *People v. Thomas*, 263 Mich.App 70, 75–76; 687 NW2d 598 (2004). Moreover, an injury need not be long-lasting or permanent to constitute a serious impairment. *Id.* at 76. An officer's loss of the use of a limb because he was on crutches for several weeks and unable to return to work for several months constitutes a serious impairment of a body function for purposes of MCL 257.58c. *Id.* at 77.

> In the present case, Officer Sova testified that the bullet travelled through his right leg and became lodged. He underwent surgery and suffered a substantial muscle loss as a result of the shooting injury. Six months after the shooting, Officer Sova was still receiving medical treatment and physical therapy although his prognosis was good. Under the circumstances, the evidence was sufficient to support a serious impairment of a body function. *Thomas*, 263 Mich.App at 77.

*Smith*, 2011 WL 1775869, at *4 (internal footnote omitted).

This on-the-merits ruling was not an unreasonable application of *Jackson*. Sova testifed that he had surgery, that, at the time of trial, he was still under a doctor's care, and that "[t]hey're

hoping for a full recovery. They're not guaranteeing anything." (Trial Tr. Vol. I at 65–66.) And

to the extent that Smith disagrees with the Michigan Court of Appeals' interpretation of what

amounts to a "serious impairment of a body function" within the meaning of Michigan Compiled

Laws § 257.58c, that would not justify habeas relief. *See Sanford v. Yukins*, 288 F.3d 855, 862

(6th Cir. 2002) ("What is essential to establish an element, like the question whether a given

element is necessary, is a question of state law." (internal quotation marks omitted)); *see also*

*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law,

including one announced on direct appeal of the challenged conviction, binds a federal court

sitting in habeas corpus.").


### D.

The Court turns to Smith's claim that the trial court miscalculated his prior record and

offense variables which resulted in an unduly long sentence and, relatedly, that trial counsel was

constitutionally ineffective by failing to ensure that the court correctly scored those variables.

In his brief on direct appeal, Smith argued:

PRV 4 should be scored at 2 because both of the juvenile cases were low severity
felonies. PRV 6 should be scored at zero because Defendant was found not guilty
in the other case he had in front of Judge Ryan.

As argued [above], there was insufficient evidence of a serious bodily function
and therefore OV 3 should have been scored at 10. Also, because Defendant was
not the shooter, or for the sake of argument, was only shooting as he ran, OV19
should have been scored at zero.

(Smith's Br. on Appeal to Mich. Ct. App. at 28.)

The Michigan Court of Appeals rejected this argument as follows:

[D]efendant challenges the scoring of prior record variables (PRV) 4 and 6 and
offense variables (OV) 3 and 19 as improper. We disagree. . . . With regard to
PRV 4 and 6, defendant presents a conclusive argument, and the presentence
investigative report was not submitted with the lower court record. Consequently,

21

we cannot address this claim. . . . The challenge to OVs 3 and 19 are contrary to the trial court's factual findings and are simply without merit.

*Smith*, 2011 WL 1775869, at \*5.

The Court finds that Smith's claim regarding the scoring of his prior record and offense variables does not entitle him to habeas relief. To the extent that Smith maintains that the trial court violated state law in scoring his sentencing variables, that claim would not be cognizable on collateral review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). To the extent that Smith seeks to cast his sentencing-error claim as a denial of due process, it also fails. As to the PRV scoring, Smith does not direct the Court to the presentence investigative report and did not attach it to his Amended Petition. As to the OV scoring, Smith's claim of error is premised on the claim that he shot in self-defense and that the officers did not suffer a "serious impairment of a body function." But, as discussed, there was substantial evidence for the trial court to conclude the contrary. As such, the Court cannot say that Smith was deprived of constitutionally mandated due process by the trial court's scoring of the OV variables as it did. At a minimum, Smith has not shown that the Michigan Court of Appeals unreasonably applied clearly established Supreme Court precedent in reaching that conclusion.

It follows that Smith's claim that counsel was constitutionally ineffective for failing to ensure proper scoring also does not warrant habeas relief. *See Spencer v. Booker*, 254 F. App'x 520, 526 (6th Cir. 2007) ("Because there is nothing in this record to suggest that the state trial court would have been inclined to impose a lesser sentence given a 0–point PRV 2 score, we find no merit to Spencer's argument that he was prejudiced by his counsel's purported ineffectiveness.").

**E.**

Finally, Smith asserts that he has been denied his "due process right to access to the courts by virtue of the trial court's abuse of discretion in denying admission of exculpatory affidavits that were only obtained post-trial and ones that were not allowed into admission by the appellate courts, and which affidavits are now being denied admissibility in his post-conviction motion for relief from judgment." (Am. Pet. at 5, 13.)

Smith does not cite, and the Court is not aware, of any federal law requiring a state appellate court to permit the trial record to be expanded on appeal. And Smith makes no supported argument that the Michigan Court of Appeals unreasonably enforced that rule on his direct appeal. As for the trial court's refusal to consider or admit the affidavits in denying Smith's motion for relief from judgment, even if that was constitutional error, it would not be a basis for federal habeas relief. *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("As the district court noted, the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review.").

**III.**

For the foregoing reasons, the Court DENIES Smith's amended petition for a writ of habeas corpus (Dkt. 12).

The Court finds, however, that reasonable jurists could debate this Court's resolution of Smith's ineffective-assistance-of-trial-counsel claim insofar as it is premised on counsel's failure to "locate, interview, or call" witnesses that would have testified that Smith was not the shooter. So the Court will grant Smith a certificate of appealability on that claim. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). The certificate is not granted as to Smith's other claims for habeas relief.

23

A separate judgment will follow.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  May 12, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 12, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson